IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZHU ZHAI HOLDINGS LIMITED and PETER PUI TAK LEE, | ) ) ) | |
| Plaintiffs/Judgment Creditors, | ) ) | |
| v. | ) ) | Case No. 20-cv-4985 |
| STEVEN IVANKOVICH, | ) ) | Honorable Sharon Johnson Coleman |
| Defendant/Judgment Debtor. | ) ) | |

**PLAINTIFFS' SECOND MOTION TO COMPEL AND EXTEND THE HOLD ON THE WALKER & DUNLOP FUNDS**

Plaintiffs/Judgment Creditors, ZHU ZHAI HOLDING LIMITED and PETER PUI TAK LEE, by their attorneys, KONICEK & DILLON, P.C., pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rule 37.2, hereby move this Court to compel Defendant/Judgment Debtor, STEVEN IVANKOVICH, to produce all documentation evidencing any and all transfers made by Judgment Debtor to or from entities he owned, operated, managed, maintained, controlled, had an interest in or was a signatory to from 2018 to present and to further extend the hold on the Walker & Dunlop funds. In support thereof, Judgment Creditors state as follows:

1.	On April 24, 2023, Judgment Creditors filed a Motion to Compel and Extend. (Dkt. 263). Said motion was brought after the Judgment Debtor failed to comply with a February 3, 2023, Rule 37 Letter that Judgment Creditors wrote to Judgment Debtor. (Ex. 1, February 3, 2023, Letter). In the letter, Judgment Creditors requested that Judgment Debtor produce all documentation evidencing any and all transfers made by Judgment Debtor to entities he owned, operated, managed, maintained, controlled, had an interest in or was a signatory to from 2018 to the then present time. *Id.* Judgment Creditors requested said documents given the Judgment

Debtor's testimony that he used his own personal finances to fulfill "obligations" owed by entities he owned, operated, managed, maintained, controlled, had an interest in or was a signatory to. The following are excerpts of Judgment Debtor's testimony:

> Q:  So you used personal funds to pay obligations of the companies?
>
> A:  Yes.
>
> Q:  Okay. And that was through 2020 and 2021, correct?
>
> A:  It started in 2019 as well.
>
> Q:  Okay. And then – and then what – who was the one that authorized payment of your personal funds to pay obligations of the companies, it had to be you, right?
>
> A:  Yes.
>
> Q:  And how did you transfer funds to these companies – well, which funds did you pay expenses for or obligations for, which corporations?
>
> A:  All of them.
>
> Q:  And how were those funds transferred?
>
> A:  It would have been any way transferring funds. It would have been just bank transfers, wire transfers, check, you know, any means people use to pay bills.

Ex. 2, Deposition of Judgment Debtor at 50:12 – 51:3.

Indeed, Judgment Debtor moved over $11 million of his own liquid assets to pay bills owed by entities he controlled or had an interest in:

> Q:  And then if you go down to Schedule B, it talks about "Marketable Securities, Stocks, Bonds, U.S. Government" and the total market value you have is $11 million, do you see that?
>
> A:  Yes.
>
> Q:  This is again on your personal financial statement?
>
> A:  Yes.

Q:      And today, Mr. Ivankovich, do you still have that $11 million in marketable securities, stocks, bonds, and U.S. government?

A:      No.

Q:      Okay.  And are you telling me that between again 2020 and today August 2022, all of that money was transferred out?

A:      It was used to pay bills.

Q:      Okay.  And what bills was it used to pay?

A:      Payroll for the companies, mortgage payments, reserve payments, just the expenses of the companies when everything shut down during COVID.

*Id.* at 51:17 – 52:9.

Judgment Debtor Ivankovich admitted he has been involved in the movement of his personal funds among company accounts as recently as April of last year:

Q:      Since April 6th of 2022, has any money been transferred out of the P2 Portfolio Managing Member LLC or Ivankovich Family LLC accounts?

A:      I'm sure there was.
…

Q:      Well, you were involved with them, right?

A:      Yeah.

Q:      And –

A:      I was involved in the organization.

Q:      And how much was transferred out?

A:      I don't know.
…

Q:      Why was any money moved?

A:      Because these are companies that conduct business so to pay bills, to make investments.

3

*Id.* 71:25 – 72:13; 73:16-17.

Judgment Debtor testified that he can move monies from one entity to another, even if he neither owns the entities nor has a formal interest in said entities:

> Q:     Is it your testimony, sir, in this Court under oath that you have the authority to move money as you see fit to that entity or away from that entity?
>
> A:     I don't have the authority, but I have the ability.

Ex. 3, Excerpt of January 13, 2020, Trial Transcript at 304:8-17.

2.     On May 24, 2023, this Court granted the Judgment Creditors' motion in part and denied it in part. (Dkt. 274). The Court granted the motion to the extent that "it [was] clear that further discovery proceedings [were] warranted given plaintiffs' reported difficulties receiving documentation from Judgment Debtor." *Id.* According to this Court, "justice require[d] granting another extension in this case." *Id.* The Court denied the motion to compel as premature given that "plaintiffs [did] not appear to have made a formal discovery request pursuant to federal and local rules." *Id.*

3.     On June 8, 2023, Judgment Creditors propounded their First Request for Production of Documents on Judgment Debtor. (Ex. 4, June 8, 2023, Production Requests). Said requests arose out of the testimony relied upon in the Judgment Creditors' earlier Rule 37 Letter and Motion to Compel.

4.     Later, given Judgment Debtor's deficient production responses, on July 21, 2023, the parties held a Rule 37 meet and confer telephonic conference. (Ex. 5, July 21, 2023, Meet and Confer). During the conference, counsel for Judgment Creditors advised counsel for Judgment Debtors that their production responses were inadequate as they were incomplete.

5.     On July 24, 2023, counsel for Judgment Debtors indicated in an email to counsel for Judgment Creditors that Judgment Debtor had "no additional responsive documents to

produce." (Ex. 6, July 24, 2023, Correspondence). Attached to said correspondence was a letter dated July 22, 2023. (Ex. 7, July 22, 2023, Letter). In the letter, counsel for Judgment Debtor indicated a myriad of reasons why they "believe[d] all relevant documents included in your request for document production had been produced." *Id.* Despite Judgment Debtor's insistence to the contrary, the fact of the matter is that additional transactional documentation substantiating Judgment Debtor's testimony regarding the transfer of his personal monies must exist.

6. Again, to date, Judgment Debtor has failed to produce any transactional documentation evidencing the transfer of monies he testified were used to satisfy the "obligations" of entities that he owned, operated, managed, maintained, controlled, had an interest in or was a signatory to. Judgment Debtor's testimony unequivocally establishes that he used his own personal funds to pay obligations owed by his network of companies. Surely said documentation exists. It is this documentation that Judgment Creditor seeks to obtain from Judgment Creditor. Said documentation will establish, once and for all, that Judgment Debtor has control over a vast array of entities that have the financial wherewithal to satisfy the $4,503,842.00 judgment that has been pending against him since August 17, 2021. (Dkt. 92).

7. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim … and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The scope of post-judgment discovery is broad and permits the judgment creditor to obtain information about the debtor's current and past financial assets which could reasonably lead to the discovery of concealed or fraudulently transferred assets." *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral Assocs.*, 1997 WL 757879, at *2 (N.D. Ill. Dec. 2, 1997) (citations omitted). The Federal Rules of Civil Procedure governing post-judgment discovery are "quite permissive," generally allowing a judgment creditor to obtain discovery from any person,

5

including the judgment debtor, as provided in the federal rules or by the procedure of the state in which the court is located. *Leibovitch v. Islamic Republic of Iran*, 297 F. Supp. 3d 816, 825 (N.D. Ill. February 27, 2018) (citing Fed. R. Civ. P. 69(a)(2)).

8. Here, Judgment Debtor's testimony highlighted above establishes that he used his many millions of dollars of personal liquid assets to pay "obligations" of companies he owned, operated, managed, maintained, controlled, had an interest in or was a signatory to. However, the fact remains that Judgment Debtor has not yet produced documentation evidencing any such transfers.

9. The documentation of said transactions is highly relevant to the Judgment Creditors' claim against the Judgment Debtor. The transactional documents will allow the Judgment Creditors to establish that Judgment Creditor was both in control of the companies that he used his personal assets to pay obligations for and or that Judgement Creditor simply used said companies to hold his own personal assets in an effort to avoid paying the instant judgment. Thus, this Court should compel Judgment Debtor to produce said transactions as they are relevant pursuant to Rule 26 and this proceeding more generally.

10. Finally, Judgment Creditors again ask that this Court extend the hold on the frozen Walker & Dunlop funds due to Judgment Creditors' difficulty in obtaining the aforementioned transactional documents. In short, Judgment Creditors have shown there is good cause for this Court to require Walker & Dunlop to hold the funds for an additional extended period of time. See Ill. S. Ct. R. 277(f) (permitting the Court to "grant extensions … as justice may require.").

WHEREFORE, Plaintiffs/Judgment Creditors, ZHU ZHAI HOLDING LIMITED and PETER PUI TAK LEE, respectfully request this Court enter an order extending the hold on the Walker & Dunlop funds and requiring Judgment Debtor to produce the following:

1.      Documentation evidencing any and all transactions made by Judgment Debtor to or from entities he owned, operated, managed, maintained, controlled, had an interest in or was a signatory of from 2018 to the present;

2.      Documentation evidencing any and all transactions made by Judgment Debtor to or from the following entities from 2018 to the present:

- Overlook Managing Member LLC
- PILGRIM Windtree LLC
- PILGRIM Coulter LLC
- PILGRIM Warrick LLC
- PILGRIM Caribbean Isle LLC
- PILGRIM Forest Park LLC
- Alliance HTTX GP, LLC
- Alliance HTFL GP, LLC
- Alliance HTTX Limited Partnership
- Alliance HTFL Limited Partnership
- Atlas Apartment Acquisitions LLC
- Atlas Apartment Homes LLC
- 2519 Halsted Properties LLC
- Tyler Atlas, LLC
- Alliance SH 2GP, Inc.
- IMG Marine LLC
- J&S Family LLC
- Atlas Residential Solutions Management UK Limited
- Atlas Residential LLC
- Alliance Residential Management LLC
- April 2022 Sale of PILGRIM Caribbean Isle LLC, PILGRIM Forest Park LLC and Cypress Lakes
- Glencoe Family LLC
- A&O Family LLC
- Consilient Holdings Investments LLC
- Atlas P2 Managing Member LLC
- Atlas Holdings Investments LLC

3.      Documentation evidencing any and all transactions made by Judgment Debtor to or from JP Morgan Chase & Co. from 2018 to the present.

Dated: August 16, 2023                    Respectfully submitted,

                                          /s/ Amir Tahmassebi
                                          Amir Tahmassebi, Bar #6287787
                                          Konicek & Dillon, P.C.
                                          70 W. Madison, Suite 2060
                                          Chicago, IL 60602
                                          (312) 328-9166 (Direct)
                                          (630) 262-9659 (Fax)
                                          amir@konicekdillonlaw.com

                                          Steven Lammers, Bar #6294413
                                          Mandel Rauch & Lammers, P.C.
                                          704 Adams Street, Suite F
                                          Carmel, IN 46032
                                          (317) 581-7440 (Direct)
                                          (317) 848-6197 (Fax)
                                          slammers@mhmrlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, hereby certify that a true and correct copy of the foregoing was filed

with the Court on August 16, 2023, causing all counsel of record to be served via the Court's

CM/ECF filing system.

                                          /s/ Amir R. Tahmassebi
                                          Amir R. Tahmassebi