**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ZHU ZHAI HOLDINGS LIMITED and | ) | |
| PETER PUI TAK LEE, | ) | |
| | ) | Case No. 20-CV-4985 |
| Plaintiffs/Judgment Creditors, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | Hon Sidney I. Schenkier (Ret.), |
| STEVEN IVANKOVICH, | ) | Special Master |
| | ) | |
| Defendant/Judgment Debtor. | ) | |

-----------------------------------------------------------------------------------------------------

**THIRD-PARTY LLCs' AND STEVEN IVANKOVICH'S**
**OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION**

NOW COME Pilgrim Warwick LLC, Pilgrim Coulter LLC, Pilgrim Windtree LLC, Pilgrim Caribbean Isle LLC, and Pilgrim Forest Park LLC (collectively, "Third-Party LLCs"), and Steven Ivankovich ("Steven"), by and through their respective counsel, Chuhak & Tecson, P.C., Gary Goldstein, and Jason M. Wandner, and for their Objection to Special Master's Report and Recommendation filed on May 14, 2025 ("Report"), state as follows:

1. The Third-Party LLCs and Steven respectfully submit that the Special Master's Report contains errors of fact and law, as outlined below. Accordingly, the Court should review the issues on a *de novo* basis. In doing so, the Court should reject the Report and grant the relief sought by the Third-Party LLCs and Steven.

2. First, the Special Master ignored important testimony by credible witnesses Shanna Willis and Mark Brown, which prove the Escrow Funds are the assets of the Third-Party LLCs, which are legitimate companies, not simply Steven's alter ego. Such testimony includes the following.

1

a.    Dr. Anthony Ivankovich funded his family's real estate investments while his son, Steven, managed the assets, but made no capital contributions (Tr. 282:23 – 285:5).

b.    The proceeds from the sale of Florida properties of approximately $30,000,000 (remaining after the 2019 Loan was extinguished) were sent to Dr. Anthony's A&O Family LLC account as a return of capital contributions and for repayments of loans (Tr. 309:1 – 309:18; Pls.' Ex. 41, ¶ 12).

c.    Each of the Pilgrim LLCs has its own set of business records, including general ledgers, balance sheets, profit & loss statements, rent rolls, and budgets (Tr. 287:23 – 288:19).

d.    Each of the five Pilgrim properties had/has its own on-site manager who utilizes third-party software to fulfill their managements duties (*id.*).

e.    The Third-Party LLCs have their own operational expenses, employees, creditors, and payroll obligations (Tr. 461:18 - 462:13, 466:9 – 466:23).

f.    Walker & Dunlop required the Third-Party LLCs to hire Titan Financial Services ("Titan") as the asset manager to oversee the properties (Tr. 278:17 - 280:15). Titan is directed by Mark Brown, a seasoned banking professional focused on protecting the properties; he does not take orders from Steven (Tr. 328:6 – 329:10). Separately, Shanna Willis of Atlas Apartment Homes and Atlas Residential LLC was/is the operations manager for the properties (Tr. 431:19 – 431:23; 462:14 – 463:8). In sum, the Third-Party LLCs operate largely independent of Steven (Tr. 471:6 – 471:19).

g.    On a net basis, more money flowed into the Third-Party LLCs from the Ivankovich family accounts than flowed out of the Third-Party LLCs to the Ivankovich family accounts (Tr. 464:16 – 466:8, 472:22 – 473:22).

2

h.      To protect the properties while the Escrow Funds have been frozen, Drs. Anthony and Olga (his wife) have been paying the insurance premiums, which were $950,000 per year, from their A&O Family account (Tr. 320:11 – 323:21, 327:4 – 327:8).  For the remaining three properties, annual insurance and real estate taxes cost approximately $1,500,000, essentially the balance of the Escrow Funds (Tr. 479:3 – 479:17).

3.      When proper consideration is given to the foregoing facts, combining them with the undisputed facts regarding the origin of the Escrow Funds, this case is clearly distinguishable from *Nat'l Life Real Estate Holdings, LLC v. Scarlato,* 2017 Ill. App. (1st) 161943, and *Kalmin v. Varan,* 2021 IL App (1st) 2007.  *See* Third-Party LLCs' and Steven's Consolidated Post-Hearing Memorandum ("Defense Memo"), pp. 13-17.  Indeed, under the Special Master's expansive interpretation of ownership, the doctrine of corporate separateness is destroyed, as any LLC assets controlled by a single individual would become property of the manager.  Therefore, the Special Master erred by concluding that Steven's control over the Escrow Funds equated to his ownership of the same.  Having exposed *Scarlato* and *Kalmin* as unsupportive of Plaintiffs' and Jeanette's position, it should be clear that no legal authority exists for the relief they seek.

4.      Further, the Special Master erred by concluding that the Third-Party LLCs' lack of objection to Steven's use of the sale proceeds from the Florida properties is evidence that Steven was the actual owner.  *See* Doc. 379 at 12-16.  Indeed, in a recent decision by a Delaware court analyzing this issue, the court held that Steven's transfer of the sale proceeds to A&O Family, LLC, for the benefit of his family, was consistent with the governing LLC operating agreement. *See* Memorandum Opinion filed on May 23, 2025 in *P-5 GRA, LLC v. Steven Ivankovich et al.*, Case No. 2023-1182-LWW in the Court of Chancery of the State of Delaware, a true and correct

3

copy of which is attached hereto as Exhibit 1. Accordingly, the Third-Party LLCs had no grounds to object to Steven's transfer, as there was nothing improper about it.

5. Along those same lines, the Special Master erred by speculating as to how the Escrow Funds would have been used had they not been frozen by the Citation. Steven could have properly returned them to A&O Family, LLC as repayment of capital and/or loans, as he did with the proceeds from the Florida properties. Equally plausible, the Pilgrim LLCs could have used them to pay the real estate taxes and/or insurance for the remaining Texas properties, which later had to be paid by Drs. Anthony and Olga. Numerous other possibilities exist. It is impossible to know the answer, which is why the Special Master should have relied on the undisputed facts: the Escrow Funds were legitimate loan proceeds and/or rental income owned by the borrowers/property owners (not Steven), and Steven *never* transacted from the accounts.

6. Moreover, the Special Master erred in relying on *United States v. Miller,* 39 F.4th 844 (7th Cir. 2022), *People v. Chicago Title & Trust Co.,* 389 N.E.2d 540 (Ill. S. Ct. 1979), and *Levine v. City of Chicago,* 2024 IL App (1st) 231245. *See* Doc. 379 at 17-18. Although these cases support the general premise that actual ownership may be determined by control, rather than title, none of them do so in the context of an Illinois citation proceeding. Further, unlike *Miller*, there is no dispute that "paper title" to the Escrow Funds was always held by the Third-Party LLCs, not Steven. Here, "paper title" is trustworthy and undisputed, and it should be respected in accordance with black letter corporate law. *See* Defense Memo at 2. There is no legal authority extending the foregoing cases to an Illinois citation proceeding against a Delaware LLC. It is not the role of the Special Master, or this Court, to expand the substantive laws of Illinois or Delaware.

7. Next, the Special Master erred by rejecting the Third-Party LLCs' argument that Plaintiffs and Jeanette are impermissibly attempting a reverse veil-pierce. In doing so, the Special

4

Master dismisses the argument as a "straw man," because it assumes the Escrow Funds belong to the Third-Party LLCs. *See* <u>Doc. 379</u> at 18-19. In fact, the Third-Party LLCs have not employed circular reasoning, as the purpose of a reverse veil-pierce is to show that a parent and subsidiary are essentially one entity that exists for no other purpose than fraud. *See Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood,* 752 A.2d 1175, 1184 (Del. Ch. 1999). That is what Plaintiffs and Jeanette tried to prove here, except they did not label it as a reverse veil-pierce. Accordingly, the Special Master should have applied the law regarding reverse veil-pierce claims under Illinois and Delaware law. *See* Defense Memo at 7-13. In doing so, the Special Master should have concluded that the Escrow Funds cannot be used to satisfy the debts of Steven. *Id.*

8. Finally, the Special Master erred by not recognizing that Plaintiffs and Jeanette are entitled to, at most, a charging order against Steven's LLC interests, if any. *See* Defense Memo at 7. Like the reverse veil-pierce issue, the Special Master rejected this argument because he found the Escrow Funds to be the property of Steven. <u>Doc. 379</u> at 19-20. However, that conclusion is flawed because it relies on *Scarlato*, *Kalmin*, and other inapplicable cases discussed above. Had the Special Master correctly distinguished those cases from this one, he should have concluded that, at most, Plaintiffs and Jeanette should be awarded a charging order.

WHEREFORE, the Third-Party LLCs and Steven Ivankovich respectfully request that the Court enter an order: (i) Rejecting the Special Master's Report; (ii) dismissing the Citation against Walker & Dunlop; (iii) directing the clerk of the court to disburse the Escrow Funds to the Third-Party LLCs via their counsel's trust account; and (iv) granting the Third-Party LLCs such further relief as is just and appropriate.

5

Respectfully submitted,

Pilgrim Warwick LLC, Pilgrim Coulter LLC, Pilgrim Windtree LLC, Pilgrim Caribbean Isle LLC, and Pilgrim Forest Park LLC

By: /s/ Michael W. Debre
Michael W. Debre (#6296197)
Chuhak & Tecson, P.C.
120 S. Riverside Plaza, Suite 1700
Chicago, Illinois 60606
T: 312-855-4603
mdebre@chuhak.com

-and-

By: /s/ Gary Goldstein
Gary Goldstein (Maryland Federal Bar #00825)
1710 Lands End Road
Manalapan, FL 33462
T: 561-373-0327
gary@gagpa.com
*Admitted Pro Hac Vice*

-and-

Steven Ivankovich

By: /s/ Jason M. Wandner
Jason M. Wandner
LAW OFFICES OF JASON M. WANDNER, P.A.
Miami-Dade Office
New World Tower
100 N. Biscayne Boulevard, Suite 1607
Miami, Florida 33132
T: 305-868-1655
jason@wandnerlaw.com

4923-7573-1271.1.34147.78623

## **CERTIFICATE OF SERVICE**

Under penalties as provided by law, the undersigned attorney hereby certifies that the Third-Party LLCs' and Steven Ivankovich's Objection to Special Master's Report and Recommendation was served electronically upon all registered parties via the CM/ECF system of the United States District Court for the Northern District of Illinois, and the JAMS system, on this 27th day of May, 2025.

/s/ Michael W. Debre

4923-7573-1271.1.34147.78623

# Exhibit 1

EFiled: May 23 2025 02:53PM EDT
Transaction ID 76335748
Case No. 2023-1182-LWW

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| P-5 GRA, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>   v.<br><br>STEVEN IVANKOVICH,<br><br>        Defendant,<br><br>   and<br><br>OVERLOOK MANAGING MEMBER LLC, ALLIANCE HTFL GP, L.L.C., PILGRIM CARIBBEAN ISLE LLC, PILGRIM FOREST PARK LLC, each a Delaware limited liability company,<br><br>        Nominal Defendants. | C.A. No. 2023-1182-LWW |

## MEMORANDUM OPINION

Date Submitted: April 1, 2025
Date Decided: May 23, 2025

Michael Busenkell, Bradley P. Lehman, GELLERT SEITZ BUSENKELL & BROWN, LLC, Wilmington, Delaware; Keith A. McKenna, MCKENNA LAW, Jersey City, New Jersey; *Counsel for Plaintiff P-5 GRA, LLC*

Phillip A. Giordano, Geoffrey A. Boylston, Madeline R. Silverman, GORDON, FOURNARIS, MAMMARELLA, P.A., Wilmington, Delaware; *Counsel for Defendant Steven Ivankovich*

**WILL, Vice Chancellor**

A minority member of a Delaware limited liability company is suing the managing member for breach of the LLC agreement. It claims that asset sales by downstream subsidiaries of the LLC entitle it to distributions at the parent level. Neither the LLC agreement nor well-pleaded allegations in the minority member's complaint support this theory. Delaware's respect for corporate separateness further undermines it.

The minority member's other claims fare no better. One claim, for breach of fiduciary duty, is duplicative of the contract claim. The other, which seeks books and records, was previously dismissed with prejudice by the minority member.

This case is therefore dismissed in full.

## I.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Verified Complaint and the documents it incorporates by reference.[1]

### A.    Overlook and the Pilgrim Entity Subsidiaries

Plaintiff P-5 GRA, LLC is a Delaware limited liability company with its principal place of business in New York.[2] It holds a 7% membership interest in nominal defendant Overlook Managing Member LLC ("Overlook")—another

---

[1] Verified Compl. (Dkt. 1) ("Compl.").

[2] *Id.* ¶ 2.

1

Delaware limited liability company.[3]  Defendant Steven Ivankovich, an Illinois resident, holds the remaining 93%.[4]

Overlook is governed by the May 2017 Limited Liability Company Agreement (the "LLC Agreement").[5]  It designates Ivankovich as Overlook's "Manager."[6]  As Manager, he has "the right, power, and authority, to manage, operate and control the business and affairs of [Overlook] and to do or cause to be done any and all acts . . . deemed by [him] to be necessary or appropriate to effectuate the purposes of [Overlook]."[7]

Overlook's purpose is to "serve as the manager, member, and/or managing member of each of PILGRIM Windtree LLC . . . , PILGRIM Coulter LLC . . . , PILGRIM Warwick LLC . . . , PILGRIM Caribbean Isle LLC . . . , and PILGRIM Forest Park LLC . . . ."[8]  Two of these entities—nominal defendants PILGRIM Caribbean Isle LLC and PILGRIM Forest Park LLC (together, the "Pilgrim Entities")—are wholly-owned subsidiaries of Overlook.[9]

---

[3] *Id.* ¶¶ 4, 12.

[4] *Id.* ¶ 15.

[5] *See* Compl. Ex. A ("Overlook LLC Agreement").

[6] *Id.* at 1 (Recitals).

[7] *Id.* § 7.02(a).

[8] *Id.* § 3.01(a).

[9] Compl. ¶ 21; *see* Compl. Ex. B (Organization Chart).

2

### B.     The Alliance Entities and Florida Properties

Further down the entity structure, the Pilgrim Entities are each 50% members of Alliance HTFL GP, LLC ("Alliance GP").[10]   Alliance GP is governed by an Amended and Restated Limited Liability Company Agreement.[11]   P-5 is the secretary of Alliance GP.[12]   P-5 is not a member of Alliance GP.[13]

Alliance GP holds a .01% membership interest in Alliance ATFL Limited Partnership (DE) Property Borrower LP ("Alliance LP").[14]   The Pilgrim Entities together hold the other 99.9% of Alliance LP's membership interests.[15]

Alliance LP owned two real properties in Florida called Forest Park and Caribbean Isle (together, the "Florida Properties").[16]   In late March or early April 2022, the Florida Properties were sold for $35 million.[17]   A few days after closing, Ivankovich caused Alliance LP to transfer $30 million to A&O Family, LLC—a

---

[10] Compl. ¶ 20; *see* Compl. Ex. B.

[11] Compl. ¶ 23.

[12] *Id.* ¶ 24.

[13] *See id.* ¶ 20.

[14] Compl. Ex. B.

[15] *Id.*

[16] Compl. ¶¶ 37-39.

[17] *Id.* ¶¶ 25, 37-39.

Florida limited liability company controlled by and for the benefit of Ivankovich's family.[18]

The entity structure before the Florida Properties were sold is as follows:[19]



## C.  This Litigation

None of the proceeds from the sale of the Florida Properties were sent upstream to the Pilgrim Entities or Overlook.[20]   P-5 believes that Ivankovich's failure to distribute to it a portion of the sale proceeds violated the LLC Agreement.[21]

---

[18] *Id.* ¶ 40.

[19] Compl. Ex. B.

[20] *See* Tr. Oral Arg. on Def.'s Mot. Dismiss (Dkt. 34) ("Hr'g Tr.") 9-10; Compl. ¶ 39.

[21] Compl. ¶¶ 51-52.

It insists that it is entitled to $2,469,117.94—a 7% pro rata share of the proceeds of the $35 million sale.[22]

In July 2023, P-5 filed a books and records suit in this court against Overlook.[23]  After some discovery, the parties filed a stipulated proposed order of dismissal with prejudice, which was granted on October 9, 2023.[24]

The next month, on November 21, P-5 filed this plenary suit against Ivankovich.[25]  On May 3, 2024, Ivankovich moved to dismiss the Complaint and, in doing so, raised several pleading deficiencies.[26]  Rather than amend the Complaint, P-5 opposed the motion to dismiss.[27]  Briefing was completed on July 1, 2024.[28] Oral argument on the motion to dismiss was held on November 15, 2024 and taken under advisement.[29]

P-5 proceeded to file two additional motions.  The first sought leave to either "supplement the record" on the motion to dismiss, file an amended complaint, or

---

[22] *Id.* ¶¶ 41, 50.

[23] Verified Compl., *P-5 GRA, LLC v. Overlook Managing Member, LLC*, C.A. No. 2023-0765-LM (Del. Ch. July 27, 2023) (Dkt. 1); *see* Compl. ¶ 50; Dkt. 25, Ex. A ("Books and Records Compl.").

[24] Stipulation and Order of Dismissal with Prejudice, *P-5 GRA, LLC v. Overlook Managing Member, LLC*, C.A. No. 2023-0765-LM (Del. Ch. Oct. 9, 2023) (Dkt. 23).

[25] Compl.

[26] Def.'s Opening Br. in Supp. of Mot. Dismiss (Dkt. 25) ("Def.'s Opening Br.").

[27] Pl.'s Opp'n to Def.'s Mot. Dismiss (Dkt. 30) ("Pl.'s Answering Br.").

[28] *See* Def.'s Reply Br. in Supp. of Mot. Dismiss (Dkt. 31).

[29] Dkt. 34.

dismiss the Complaint without prejudice.[30]  The second is a motion to stay this suit in deference to a bankruptcy proceeding involving separate Ivankovich-affiliated entities.[31]  After those motions were fully briefed, I took the pending matters under advisement as of April 1, 2025.[32]

## II.    LEGAL ANALYSIS

I begin my analysis with Ivankovich's motion to dismiss and conclude that it must be granted.  The Complaint is dismissed with prejudice.  The relief sought by P-5's motion to supplement and motion to stay do nothing to change that outcome.

### A.    The Motion to Dismiss

The crux of P-5's Complaint is that Ivankovich was obligated to distribute proceeds from the sales of the Florida Properties upstream to Overlook, so that P-5 would receive a pro rata portion.  Two of the counts in the Complaint relate to this theory.  Count I is styled as a claim for specific performance, which seeks the payment of distributions.[33]  Count II is a claim for breach of fiduciary duty for Ivankovich's distribution of $30 million to his affiliated entity.[34]

---

[30] Pl.'s Mot. to Suppl. the R. on Def.'s Mot. to Dismiss, or Alternative, Req. for Leave to File Am. Compl. or That Dismissal of Compl. Be Without Prejudice (Dkt. 35) ("Pl.'s Mot. Suppl.").

[31] Mot. to Stay Proceedings (Dkt. 42) ("Pl.'s Mot. Stay").

[32] *See* Minute Order (Dkt. 47).

[33] Compl. ¶¶ 45-53.

[34] *Id.* ¶¶ 54-59.

P-5 also asserts that Ivankovich has refused to provide it with Overlook's financial information. In Count III, it claims that Ivankovich breached the Operating Agreement by failing to provide it with certain books and records.[35]

Ivankovich has moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The standard that governs the motion is as follows:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[36]

Although I "must draw reasonable inferences in favor" of the plaintiff, I am "not required to accept every strained interpretation of [its] allegations."[37] "[N]either inferences nor conclusions of fact unsupported by allegations of specific facts" must be "accepted as true."[38]

---

[35] *Id.* ¶¶ 62-66.

[36] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citation omitted).

[37] *Id.*; *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[38] *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999) (citation omitted), *aff'd sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).

### 1. The Specific Performance Claim

In Count I, P-5 alleges that it "requires an order of specific performance from a court of equity compelling Ivankovich to honor the terms of the [LLC] Agreement and make a pro rata distribution to [P-5]."[39] Specific performance is "a form of relief, not a cause of action."[40] That relief is unavailable here because P-5 seeks money damages in the form of distributions.[41] P-5 conceded at oral argument that it is "[j]ust looking for money" in Count I.[42]

Even if I were to view Count I as a breach of contract claim seeking money damages, it fails on the merits. The LLC Agreement is governed by Delaware law, which interprets contracts based on the plain meaning of their terms.[43] It is not

---

[39] Compl. ¶ 53.

[40] *See Quadrant Structured Prods. Co., v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014); *see also HT Hldgs. LLC v. Envysion, Inc.*, 2019 WL 5424508, at *3 (Del. Ch. Oct. 22, 2019) ("A decree of specific performance is a remedy, not a cause of action."); *Addy v. Piedmonte*, 2009 WL 707641, at *23 (Del. Ch. Mar. 18, 2009).

[41] *See Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997-98 (Del. 2004) (affirming that specific performance is unavailable where money damages are an adequate remedy).

[42] Hr'g Tr. 23.

[43] *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party. We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage." (first quoting *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005) and then quoting *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396 (Del. 2010))).

reasonably conceivable under the LLC Agreement that P-5 is entitled to a mandatory distribution of sale proceeds from the Florida Properties.

The LLC Agreement provides that, as Manager of Overlook, Ivankovich may determine "in [his] reasonable discretion, the level of Cash Reserves and the aggregate amount available for distributions of Cash Available for Distribution."[44] The "Cash Available for Distribution" is "all cash receipts and funds received by [Overlook] from any of the Pilgrim Entities or any other business or operations conducted by [Overlook]" less "cash expenditures" and "Cash Reserves."[45]

The LLC Agreement also sets out the priorities for distributions to Overlook's members. The first $12.3 million of distributions go to Ivankovich, unless the "Cash Available for Distribution arises from a sale or refinancing of the LLC Assets[.]"[46] If the "Cash Available for Distribution arises from a sale or refinancing of the LLC Assets," then under Section 6.04 of the LLC Agreement, the funds are "distributed to the Members pro rata in accordance with their respective membership interests."[47] Section 6.04 is the provision that P-5 invokes in seeking a pro rata distribution.[48]

---

[44] Overlook LLC Agreement § 6.02.

[45] *Id.* at Addendum I. "Cash Reserves" are "the amount of cash necessary to be maintained in [Overlook's] cash management fund and/or any accounts for working capital or other reserves or purposes necessary to provide for the foreseeable needs of [Overlook]." *Id.*

[46] *Id.* § 6.04(a).

[47] *Id.*

[48] Compl. ¶ 28.

To plead a right to a pro rata distribution under Section 6.4 of the LLC Agreement, P-5 would need to show that Overlook had "Cash Available for a Distribution" gained from the sale of an "LLC Asset."[49]  But the Florida Properties at issue were not "LLC Asset[s]," which are defined as "[a]ll assets and property . . . owned by or held for the benefit of [Overlook]."[50]  The Florida Properties belonged to a downstream entity of Overlook—Alliance LP.[51]  There is no suggestion in the Complaint that Overlook ever received cash from the sale of the Florida Properties.  In fact, P-5 acknowledges that the sale proceeds were "realized by Overlook's downstream entities."[52]

P-5 seems to believe that a subsidiary's sale of assets entitles the parent LLC's members to a cut of the proceeds.[53]  The basis for that understanding is unclear.  The

---

[49] Overlook LLC Agreement § 6.04.

[50] *Id.* at Addendum I.

[51] Compl. ¶¶ 20, 33, 40.

[52] *Id.* ¶ 39; *id.* ¶ 40 ("On or about April 6, 2022, Ivankovich caused Alliance [GP] to distribute via wire transfer Thirty Million Dollars ($30,000,000.00) of the proceeds from the sale of the [Florida Properties] to A&O Family LLC, a Florida family limited liability company controlled by and for the benefit of Ivankovich's family.").  In its answering brief, P-5 argues that its claim concerns a "sale of Overlook's assets."  Pl.'s Answering Br. 6.  The Complaint says no such thing.  P-5 cannot amend its Complaint through briefing.  *See Cal. Pub. Emps. Ret. Sys. v. Coulter*, 2002 WL 31888343, at *12 (Del. Ch. Dec. 18, 2002) ("Arguments in briefs do not serve to amend the pleadings.").

[53] *See* Hr'g Tr. 25-27.  At oral argument, P-5's counsel stated that the governing agreements of the Pilgrim Entities required them to send funds up the chain to Overlook.  *Id.* at 28-29.  This assertion is both unpleaded and unbriefed.  The Pilgrim Entities' limited liability company agreements are not in the record.

Complaint does not say which provision of the LLC Agreement P-5 believes was breached. Nor does P-5's answering brief, which neglected to respond to Ivankovich's contractual arguments.[54] P-5 chose instead to limit its argument to the availability of specific performance.[55]

In any event, Delaware law does not support P-5's unbriefed theory. In Delaware, "there exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors."[56] The assets of an LLC's subsidiary—or, here, the assets of its subsidiary's subsidiary—are not the assets of the parent LLC.[57] If Alliance GP were to distribute the proceeds upstream, they would first belong to Alliance LP's members, the Pilgrim Entities. P-5 is not a member of either.

---

[54] *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[55] *See* Pl.'s Answering Br. 8-9.

[56] *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018); *see also Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006) (explaining that Delaware law is "built on the idea that the separate legal existence of corporate entities should be respected—even when those separate corporate entities are under common ownership and control").

[57] *Cf. Spring Real Est., LLC v. Echo/RT Hldgs., LLC*, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016) (explaining the general rule that, absent veil piercing, "a parent has no property interest in the assets of a subsidiary"); *Roseton OL, LLC v. Dynegy Hldgs., Inc.*, 2011 WL 3275965, at *15 n.110 (Del. Ch. July 29, 2011) ("The parent's ownership of all of the shares of the subsidiary does not make the subsidiary's assets the parent's.") (citation omitted).

11

2.    The Fiduciary Duty Claim

Count II is a claim for breach of fiduciary duty.  P-5 alleges that Ivankovich breached his duty of loyalty in two ways.  First, Ivankovich "secur[ed] an improper benefit for himself and engag[ed] in intentional wrongdoing with respect to the distribution of $30 million to himself while making no pro rata distribution to [P-5]."[58]  Second, Ivankovich "refus[ed] to provide the information necessary for [P-5] to fulfill its duties as Secretary of Alliance [GP]."[59]  Neither theory supports a reasonably conceivable breach of fiduciary duty claim.

P-5's theory regarding the distribution fails because it implicates requirements of the LLC Agreement.  "[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim" and "any fiduciary claims arising out of the same facts that underlie the contract obligations [are] foreclosed as superfluous."[60]  There is no predicate for a fiduciary duty claim separate from the LLC Agreement's terms.[61]

---

[58] Compl. ¶ 58.

[59] *Id.*

[60] *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

[61] *See MHS Cap. LLC v. Goggin*, 2018 WL 2149718, *8 (Del. Ch. May 10, 2018) ("Delaware law is clear that fiduciary duty claims may not proceed in tandem with breach of contract claims absent an 'independent basis for the fiduciary duty claims apart from the contractual claims.'" (quoting *Renco Grp., Inc. v. MacAndrews AMG Hldgs.*, 2015 WL 394011 (Del. Ch. Jan. 29, 2015))).  P-5's counsel conceded at argument that Count II is duplicative of Count I.  Hr'g Tr. 35.

12

The theory regarding alleged duties owed to P-5 as secretary of Alliance GP also fails. "A claim for breach of fiduciary requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty."[62] P-5 does not—and cannot—identify what fiduciary duties Ivankovich, as Alliance GP's Manager, owed to Alliance GP's company secretary.[63] To the extent that P-5 contends Ivankovich breached a fiduciary duty to Alliance GP, it cannot pursue a claim on the entity's behalf because it is not an Alliance GP member.[64]

### 3. The Breach of Contract Claim

Count III is a breach of contract claim regarding P-5's information rights. It alleges that Ivankovich breached Sections 8.02, 8.03, and 8.06 of the LLC Agreement, which allegedly require the Manager to give P-5 financial information about Overlook.[65] This precise claim was raised in P-5's earlier books and records litigation, which it opted to dismiss with prejudice.[66] P-5 cannot raise it anew.

"The doctrine of collateral estoppel 'precludes a party to a second suit involving a different claim or cause of action from the first from relitigating an issue

---

[62] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).

[63] Hr'g Tr. 36.

[64] *See Dover Hist. Soc. v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (discussing a plaintiff's burden to demonstrate standing).

[65] Compl. ¶¶ 63-66.

[66] Dkt. 25, Ex. B (Stipulation and Order of Dismissal with Prejudice).

13

necessarily decided in a first action involving a party to the first case.'"[67]  Collateral estoppel will bar a court's consideration of an issue when:

> (1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[68]

These elements are met here.

First, P-5's 2023 books and records action sought "copies of tax return(s), financial information and access to inspect Overlook's books and records."[69]  It also requested its "costs and expenses incurred in bringing and prosecuting th[e] action, including reasonable attorneys' fees."[70]  Count III of the present Complaint likewise seeks as damages the fees and costs from the books and records suit.[71]  According to P-5's counsel, it also seeks the production of books and records.[72]

---

[67] *Nelson v. Emerson*, 2008 WL 1961150, at *6 (Del. Ch. May 6, 2008) (citing *One Virginia Ave. Condo. Ass'n of Owners v. Reed*, 2005 WL 1924195, at *10 (Del. Ch. Aug. 8, 2005)).

[68] *State v. Machin*, 642 A.2d 1235, 1239 (Del. Super. 1993) (citing *United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992)); *see also Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000).

[69] Books and Records Compl. ¶ 10.

[70] *Id.* at 7.

[71] Compl. ¶ 64.

[72] *See* Hr'g Tr. 19, 33, 37.  This request for relief is unpleaded.

14

Second, P-5's books and records action was voluntarily dismissed with prejudice.[73] "In Delaware, a dismissal with prejudice is considered an adjudication on the merits."[74] When parties "voluntarily dismiss[] [an] action, knowing that they either received the full relief to which they were legally entitled, or that they waived their rights to seek further relief, the dismissal is tantamount to a judgment on the merits."[75]

Third, the doctrine is invoked against P-5—the plaintiff in the books and records action.

Fourth, P-5 had a full and fair opportunity to pursue its books and records action. It chose to dismiss that suit with prejudice.[76]

\*          \*          \*

Litigation decisions have consequences. P-5 chose to dismiss its prior books and records action with prejudice. It opted to answer Ivankovich's motion to dismiss

---

[73] Dkt. 25, Ex. B (Stipulation and Order of Dismissal with Prejudice).

[74] *Kaufman v. Nisky*, 2011 WL 7062500, at \*1 (Del. Super. Dec. 20, 2011).

[75] *See Fields v. Frazier*, 2005 WL 3193820, \*2 (Del. Super. Nov. 21, 2005).

[76] P-5 relies on *Largo Legacy Gp., LLC v. Charles*, where the court concluded that a subsequent action was not precluded by an earlier books and records action. 2021 WL 2692426, at \*19 (Del. Ch. June 30, 2021). The books and records action there was dismissed *without* prejudice, meaning that the dismissal was not on the merits. *See* Stipulation and Order of Dismissal, *Largo Legacy Group, LLC v. Largo Hotel, LLC*, C.A. No. 2019-0869-MTZ, 2021 WL 214663 (Del.Ch. Jan. 21, 2021). Dismissals under Rule 41(a) are without prejudice, unless otherwise stated. Ct. Ch. R. 41(a).

15

in this suit instead of amending its Complaint. And it neglected to brief any argument for breach of the LLC Agreement regarding distributions.

P-5 is not entitled to a do-over. Its efforts to obtain one, which I address next, are baseless.

### B.    The Motion to Supplement

After oral argument on the motion to dismiss, P-5 moved to "supplement the record on Defendant's Motion to Dismiss in light of [] newly discovered documents."[77] The referenced documents are the limited liability company agreements for certain downstream entities of Overlook.[78] Alternatively, P-5 asks for permission to amend its Complaint.[79] These requests are denied.

P-5 cites no procedural basis to "supplement the record" on a motion to dismiss—particularly after the motion was fully briefed, argued, and submitted for decision by the court. It relies on precedent which concerns the application of the *Pope* test to reopen a trial record.[80] The record before me on the motion to dismiss is based only on the Complaint and documents incorporated into or integral to it.[81]

---

[77] Pl.'s Mot. Suppl. ¶ 11.

[78] *Id.* ¶¶ 4-5; *see id.* Exs. A, B.

[79] Pl.'s Mot. Suppl. ¶ 25.

[80] *Id.* ¶¶ 14-15 (citing *Pope Invs. LLC v. Benda Pharm., Inc.*, 2010 WL 3075296, at *1 (Del. Ch. July 26, 2010)).

[81] *See Gen. Motors*, 897 A.2d at 168 ("The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion to dismiss.").

16

Its request to amend the Complaint is also improper. P-5 maintains that it "came to realize [certain documents] likely existed" after oral argument on the motion to dismiss that it could get through "channels" other than Ivankovich.[82] But nothing prevented P-5 from locating these documents *before* filing its Complaint. P-5 also could have sought the documents and amended its Complaint *after* Ivankovich moved to dismiss.[83] It must now live with its choice to stand on the Complaint.[84]

## C. The Motion to Stay

While the motion to dismiss and motion to supplement were pending, P-5 filed yet another motion.[85] This time, it asked for a stay in deference to a bankruptcy proceeding involving the A&O Family LLC and related entities.[86]

I decline to exercise my discretion to grant a stay.[87] There are no overlapping parties or issues between this action and the bankruptcy case. P-5 argues that, as in

---

[82] Pl.'s Reply in Supp. Mot. Suppl. (Dkt. 40) ¶ 1.

[83] *See* Ct. Ch. R. 15(a)(5)(A)(i).

[84] *See Braddock v. Zimmerman*, 906 A.2d 776, 783 (Del. 2006) ("[W]hen confronted with a motion to dismiss pursuant to . . . Ch. Ct. R. 12(b)(6), (c) or 23.1, [the plaintiff must] elect to either: stand on the complaint and answer the motion; or, to amend or seek leave to amend the complaint before the response to the motion was due.").

[85] *See* Pl.'s Mot. Stay.

[86] *Id.* ¶ 13. The debtors are Ivankovich Family, LLC; A&O Family, LLC; A & O Family, LLC, and Atlas P2 Managing Member, LLC. *Id.* ¶ 2.

[87] *See In re TGM Enters., L.L.C.*, 2008 WL 4261035, at *1 (Del. Ch. Sept. 12, 2008) ("The Court's right to grant a stay is within the exclusive discretion of the Court.").

17

the bankruptcy matter, "Ivankovich's liability is a central issue in this case."[88]  But Overlook is not a debtor.  Whether Ivankovich breached the LLC Agreement or his fiduciary duties as Overlook's manager is not before the bankruptcy court.  The release of claims involving Ivankovich's potential liability to the debtors is irrelevant to the claims P-5 brings here.  No judicial economy would be promoted by a stay, given that the Complaint fails to state a viable claim.[89]

## III.   CONCLUSION

Counts I and II fail to state a claim on which relief can be granted.  Count III is barred by the dismissal with prejudice of the prior books and records action.  The motion to supplement and motion to stay are denied.   This action is dismissed in its entirety with prejudice.

---

[88] Pl.'s Mot. Stay ¶ 12.

[89] To the extent that Ivankovich seeks fee-shifting for the motion to stay and motion to supplement, I cannot conclude that the motions—though meritless —were filed in bad faith.  Each party will bear its own costs under the American Rule.