# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ZHU ZHAI HOLDINGS LIMITED and PETER PUI TAK LEE, *Plaintiffs/Judgment Creditors*, v. STEVEN IVANKOVICH *Defendant/Judgment Debtor.* | Case No. 20-cv-04985 Judge Sharon Johnson Coleman Hon. Sidney I. Schenkier (Ret.), Special Master |

## ORDER

Pursuant to the Court's order appointing a special master [290], the Special Master issued a Report and Recommendations containing his findings from the evidence and legal arguments presented by the parties at the evidentiary hearing held on 2/25/2025 and 2/27/2025 and in subsequent memoranda on the disposition of the funds held in the Court Registry from the citation to Walker & Dunlop [379]. In the report, the Special Master concludes that the funds are assets of Defendant within the meaning of the citation statute and recommends further proceedings to determine if the funds should be disbursed to Plaintiffs or to Intervenor Jeanette Ivankovich. Defendant and Intervenor Third-Party LLCs filed an objection to the Special Master's Report and Recommendations [380]. In accordance with the order of appointment, the Court has reviewed these objections and the Special Master's Report and Recommendations. Over Defendant's and Third-Party LLCs' objection, the Court affirms the findings in the Special Master's Report and Recommendations and directs the Special Master to hold further proceedings to determine whether the funds should be distributed to Plaintiffs or to Intervenor Jeanette Ivankovich.

1

**Background**

As all parties are intimately familiar with the facts of this case, and in the interest of judicial economy, the Court adopts the description of the events prior to the evidentiary hearing set forth by the Special Master in his Report and Recommendations. (Dkt. 379, *1–3, 5–6.)

On February 25, 2025 and February 27, 2025, the Special Master presided over an evidentiary hearing to determine whether the $1,419,619.10 deposited by Walker & Dunlop into the Court Registry funds (the "Funds") are (a) an asset of Defendant, which should be held for distribution to Plaintiffs or to Jeanette as would be determined in a later, separate proceeding, or (b) instead should be released to the Third-Party LLCs. At the hearing, the parties called four witness to testify and thirty-seven exhibits were admitted into evidence. The parties later filed post-hearing memoranda in which they provided their closing arguments as to the disposition of the Funds. *See* Dkt. 368 (Plaintiffs' and Jeanette's consolidated post-hearing memorandum); Dkt. 369 (Defendant's and Third-Party LLC's consolidated post hearing memorandum); Dkt. 378 (Plaintiffs' supplemental memorandum). After considering the evidence and arguments offered by the parties, the Special Master issued a Report & Recommendations ("R&R") in which he concluded that the Funds were an asset of Defendant and recommended that further proceedings be held to determine if they should be turned over to Plaintiffs or to Jeanette. (Dkt. 379.)

Because "the evidence made clear that absent the citation served on Walker & Dunlop . . . the funds that Walker & Dunlop held in escrow would have been released to the seller," the Special Master considered the disposition of the proceeds from the sale of the Florida properties to be "highly relevant to the control that [Defendant] would have been able to exercise over the escrowed funds had they been released to the seller and, as with the net sale proceeds, deposited into the Alliance HTFL account." (*Id.*, *6–7.) Based on the evidence and testimony presented at the hearing, the Special Master found that within one month of the April 1, 2022, closing, Defendant transferred

2

$30,777,000.00 from the Alliance HTFL account into two other accounts that were not associated with the Third-Party LLCs—the Glencoe Family Dwelling LLC account (the "Glencoe account") and the A&O Family LLC account (the "A&O Family account")—and used those proceeds for his personal uses. (*Id.*)

First, between April 1 and 29, 2022, the Defendant wired a total of $777,000.00 from the HTFL account into the Glencoe account. During that same month, Defendant used that account for several hundred thousand dollars in personal expenses, payments that "clearly were for [Defendant's] benefit and not for the benefit of the Third-Party LLCs." (*Id.*, *7.) Second, on April 6, 2022, Defendant wired $30 million from the Alliance HTFL account to the A&O Family account. (*Id.*, *8.) Later, on June 24, 2022, an application signed by Defendant was made for a Celadon Brokerage Services account (the "Celadon account") registered to A&O Family LLC that identified Defendant as the primary authorized principal for the account. (*Id.*, *9.) A little under a month later, Defendant wired approximately $25.4 million dollars from the A&O Family account to the Celadon account. (*Id.*) Then, between August 2022 and August 2023, Defendant transferred approximately $23 million dollars from the Celadon account to the Glencoe account, and "paid from that account millions of dollar[s] of expenditures for personal purposes and not for the benefit of the Third-Party LLCs." (*Id.*, *10.)

Based on the personal nature of these expenditures and the lack of protest from the Third-Party LLCs, the Special Master found that Defendant "exercised complete dominion over the disposition of the funds from the sale of the Florida properties . . . . and would have exercised the same dominion" over the Funds held by Walker & Dunlop but for the citation. (*Id.*, *12.) Having made this factual determination, the Special Master applied Illinois law and Seventh Circuit precedent to find that the Funds were assets of the Defendant such that they could be used to satisfy the citation. (*Id.*, *12–18). Defendant and Third-Party LLCs (collectively, "Objectors") timely filed an objection

3

to the R&R and requested that the Court reject the R&R, dismiss the citation against Walker & Dunlop, and disburse the Funds to the Third-Party LLCs. (Dkt. 380.) Neither Plaintiffs nor Jeanette filed a response to this objection.

**Legal Standard**

Federal Rule of Civil Procedure 53(f)(3) requires a district court to review *de novo* all objections to findings of fact and conclusions of law made or recommended by a special master unless the parties stipulate to a different standard. Per the Court's order appointing the Special Master, the Court reviews *de novo* the objections raised by Objectors to the Special Master's findings of facts and conclusion of law. (Dkt. 290.)

When reviewing reports and recommendations made by a special master, "the general rule is that the district court steps into the shoes of an appellate court and employs the same standards that an appellate court uses to review a lower court opinion." *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998). While the Court is not bound to the Special Master's findings on de novo review, when made in the context of evidentiary hearings, "determinations as to credibility made by [a special master] are entitled to great weight." *See In re Vernon Hills, Inc.*, 348 F.2d 4, 8–9 (7th Cir. 1965); *see also Nat'l Lab. Rels. Bd. v. Neises Constr. Corp.*, 62 F.4th 1040, 1050 (7th Cir. 2023) (reviewing *de novo* "the Special Master's legal conclusions and all facts found without an evidentiary hearing"); *but see Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 2438, 81 L. Ed. 2d 247 (1984) (explaining that while a special master's findings "deserve respect and a tacit presumption of correctness, the ultimate responsibility for deciding what are correct findings of fact remains" with the court of review).

**Discussion**

The basic question before the Court is whether the Special Master erred in concluding, based on his findings from the evidentiary hearing and application of applicable law, that the Funds were

assets of Defendant and therefore subject to the citation. The record establishes that the Special Master committed no such error in his analysis.

Objectors offer three broad objections to the Special Master's order, none of which are persuasive. First, they argue that the Special Master erred by employing an actual-ownership test rather than deferring to paper title to determine ownership of the Funds and ignored material evidence in doing so. Second, they argue that the Special Master erred in rejecting their argument that Plaintiffs and Jeanette, in bringing their citation to discover assets, are attempting a reverse veil-pierce, and therefore should have applied Illinois and Delaware law regarding such claims. Third, and finally, Objectors argue that the Special Master erred by rejecting their argument that Plaintiffs and Jeanette "are entitled to, at most, a charging order against [Defendant]'s LLC interests, if any." (Dkt. 380, *5.)

As to Objectors' first argument, Illinois law makes clear that the Special Master applied the proper test to determine ownership of the Funds and did not ignore credible evidence that showed otherwise in reaching this conclusion. The Illinois citation statute, 735 ILCS 5/2-1402, permits a judgment creditor to initiate proceedings against a third party to discover "assets belonging to the judgment debtor that the third party may have in its possession." *Kalmin v. Varan*, 2021 IL App (1st) 200755, at ¶ 34, 216 N.E.3d 984, 992, 466 Ill. Dec. 151, 159. The judgment creditor has the twin burden of showing that the citation respondent has assets of the judgment debtor and that those assets belong to the judgment creditor. *Id.* The provisions of the citation statute are to be "liberally construed." *Id.* Accordingly, the phrase "assets belonging to the judgement debtor" is treated as "very open-ended" and subject to reasonable interpretation. *Nat'l Life Real Est. Holdings, LLC v. Scarlato*, 2017 IL App (1st) 161943, at ¶ 36, 83 N.E.3d 44, 55, 415 Ill. Dec. 788, 799 (holding that because appellee "had a legal right to access the proceeds of the loan at issue" in the case, the proceeds "still *belonged* to him within the meaning of Section 2-1402") (emphasis in original).

Applying *Scarlato*, the Special Master found that "the control [Defendant] exercised over the use of the proceeds" from the sale of the Florida properties was "persuasive evidence" of his control over the Funds. (Dkt. 379, *16.) The evidence that Objectors allege the Special Master ignored in coming to his conclusion—namely that the Third-Party LLCs have records, employees, and management independent of Defendant, and that the $30 million dollars wired to the A&O Family account was a return of capital contributions and loan repayment made by Defendant's father, Dkt. 380, *1–2—does not show otherwise. That the Third-Party LLCs have the trappings of legitimate companies, or that these LLCs may not have been required to object to the transfer of the sale proceeds to the A&O Family account, does not rebut the wealth of undisputed evidence that Defendant used sale proceeds that nominally belonged to these entities for his own personal use. Furthermore, the Special Master in his R&R found Defendant's claim that the transfer was a return of capital contributions to be uncredible and not supported by any testimony or documentary evidence. (Dkt. 379, *8.) On review, the Court similarly finds no such evidence to refute the Special Master's conclusion.[1]

Nor is the Court persuaded by Objectors' argument that the Special Master erred in not respecting the Third-Party LLC's "paper title" to the Funds. As cited by the Special Master in his R&R, "where substantial evidence shows that the paper title cannot be trusted, Illinois courts will

---

[1] Regarding the credibility of the evidence, the Court notes that both Plaintiffs' and Jeanette and the Special Master took great pains to describe the general unreliability of Defendant's testimony during the evidentiary hearing. In their consolidated post-hearing memorandum, Plaintiffs and Jeanette describe Defendant's testimony as being "deliberately evasive, riddled with intentionally misleading statements and rife with blatant falsehoods," and that Defendant "was flippant, mocking, and had a total disregard for the proceedings." (Dkt. 368, *4–6.) The Special Master echoed this description in his R&R, stating that "[Defendant] was repeatedly evasive, combative or flippant, and exhibited a level of disrespect for the process that the Special Master rarely has seen in his 46 years of involvement in the legal profession." (Dkt. 379, *12.) While such strong language describing the conduct of an opposing party is not unheard of in adversarial proceedings, to have this language substantiated by an experienced jurist such as the Special Master weighs heavy against Objectors and their characterization of the evidence in their objection, which the Court must now review without the benefit of having been present at the evidentiary hearing itself. *Cf. Williams v. Lane*, 851 F.2d 867, 872 (7th Cir. 1988) (emphasizing that "a reviewing court must show even greater deference to the trial court's findings that involve credibility of witnesses, 'for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'") (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S. Ct. 1504, 1512, 84 L. Ed. 2d 518 (1985)).

consider other factors to determine true ownership of the property in dispute." *United States v. Miller*, 39 F.4th 844, 851 (7th Cir. 2022) (citing, inter alia, *People v. Chicago Title & Tr. Co.*, 75 Ill. 2d 479, 492, 389 N.E.2d 540, 545 (1979) ("While title may be a factor in determining ownership it is not decisive. Of far greater importance is control of the property and the right to its benefits.")); *see also Levine v. City of Chicago*, 2024 IL App (1st) 231245, at ¶ 71 (collecting examples where "Illinois courts have recognized in other contexts that control, rather than title, determines ownership"). Based on the overwhelming evidence of the unfettered control Defendant maintained over the sale proceeds presented during the evidentiary hearing, the Special Master did not err in concluding that Defendant would have exercised the same control over the Funds had they not been subject to the citation.

Objectors' second and third arguments—that Plaintiffs and Jeanette are attempting a reverse veil-pierce that is impermissible under Illinois law, and that the two are only entitled to a charging order against Defendant's interest in the Third-Party LLC's funds—are as unavailing as the first. Both arguments are premised on the assumption that the Funds properly belong to the Third-Party LLCs. But if that fact was as undisputed as Objectors suggest, there would have been no need for the evidentiary hearing at all, let alone for the Court to appoint a special master to determine the proper owner of the Funds. Instead, and as the Special Master—and now the Court—has repeatedly emphasized, the evidence presented by the parties on the record and during the evidentiary hearing support the conclusion that the Funds are assets of Defendant and therefore subject to the citation under Section 2-1402.

For these reasons, the Court affirms the R&R submitted by the Special Master.

**IT IS SO ORDERED.**

Date: 8/7/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

7